390 So.2d 994 (1980)
Mrs. Harriet G. BOYD
v.
Charles R. SMITH & Charles R. Smith, d/b/a Smith Mechanical Service.
No. 52231.
Supreme Court of Mississippi.
November 26, 1980.
*995 William L. Waller, Jr., William L. Waller, Sr., Waller & Waller, Jackson, for appellant.
Thomas H. Suttle, Jr., Daniel, Coker, Horton, Bell & Dukes, Jackson, for appellees.
Before ROBERTSON, C.J., and BOWLING and COFER, JJ.
BOWLING, Justice, for the Court.
This appeal from the Circuit Court of the First Judicial District of Hinds County involves a suit by appellant, Mrs. Harriet G. Boyd, against appellee, Charles R. Smith, seeking damages for personal injuries sustained in a motor vehicle collision. There was a jury verdict for appellant in the sum of $5,000. Appellant appeals and appellee cross-appeals. In her assignments of error, appellant contends that:
1. Allowing cross-examination concerning claims for money arising from prior unrelated personal injuries, and the payment of that money was irrelevant, immaterial, and prejudicial, and such questioning constitutes reversible error.
2. Granting instruction D-9 which allowed the jury to consider the negligence *996 of the Coca-Cola truck driver, not a party to this action, in relieving the defendant of liability for acts he may have done in reliance on the third party was reversible error.
3. The verdict of the jury was against the weight of the evidence and was grossly inadequate.
Appellee and cross-appellant propounds the following cross-assignments of error:
1. It was error for the economist to have been allowed to express any opinions relating to damages.
2. The court erred in giving instructions P-7, P-8 and P-9.
3. The court erred in allowing plaintiff's exhibit 8 to be withdrawn from the record.
The motor vehicle collision giving rise to this suit occurred during the afternoon hours of February 10, 1978, and involved vehicles driven by appellant and appellee. The collision occurred on U.S. Highway 80 within the city limits of Jackson, Mississippi, a few hundred yards west of the intersection of U.S. Highway 80 and Terry Road. Highway 80 consists of two eastbound and two westbound lanes of travel with a dirt and grass median between the two directional lanes. At various distance intervals there were cross-overs for vehicles either to make U-turns or make left turns to go across the opposite lanes of travel and onto the frontage roads on both sides of the highway. At the time of the collision, appellant was operating her vehicle in a westerly direction on the outside lane of travel. Appellee had been operating his vehicle in an easterly direction and was making a left turn at the first cross-over west of Terry Road, intending to go onto the frontage road on the north side of the highway. As he crossed the westbound lanes of travel, his vehicle was struck in the right side by appellant's vehicle which, as stated, was traveling west. Immediately before and at the time of the collision, a large Coca-Cola delivery truck was in the inside or southern lane of the westbound lanes of travel and was stopped, waiting for eastbound traffic to clear before proceeding across those lanes to the frontage road and into the Coca-Cola plant located on the south side of the highway. Appellee, as an affirmative defense, contended that when he reached the cross-over and prior to making his left turn, the driver of the Coca-Cola truck motioned him to proceed, and that was the reason he drove out in front of appellant's westbound vehicle.
At trial, even though not affirmatively pled, appellee's attorney was permitted to cross-examine appellant about injuries received in a 1960 motor vehicle collision and money received in settlement of those claims and a workman's compensation injury she had received in 1967. Cross-examination was permitted regarding all injuries received by Mrs. Boyd in both incidents as well as the amounts of money she received in settlement. All this testimony was permitted by the trial court over appellant's objections. Appellant's testimony was that she received a back injury in the 1960 motor vehicle collision but that she fully recovered therefrom within a reasonably short time. As stated, she was permitted over objection to relate settlement negotiations and the resulting amount she received.
Mrs. Boyd was permitted over objections to be cross examined about a 1967 workman's compensation claim resulting from an injury while pushing filing cabinets. She testified that she only received an injury to her low back; that she did not receive any compensation payments, only payment for medical expenses, and that she fully recovered in a short time. She testified that she had no problem with her back or cervical spine after that incident and until the collision involved in the present suit.
It was error for the lower court to permit appellant to be forced over objection to go into detail regarding settlement negotiations for injuries received in the 1960 vehicle collision. The law on the extent of rehashing injuries received in a prior accident is uniform in the various jurisdictions. The principal case in Mississippi on this issue was set out by the Court, through Presiding Justice Gillespie, in Walters v. McLaurin, 204 So.2d 866 (Miss. 1967). *997 There, appellee received a verdict for injuries sustained when a scaffold on which he was working broke, causing him to fall to the ground. His claim was for an injury to his back. He was permitted to be cross-examined about an injury to his back in 1960, from which he was still wearing a brace at the time of the February 11, 1964, injury giving rise to the suit being discussed. An orthopedic surgeon testified that he examined appellant in 1962 and treated him in connection with his back injury of September 22, 1960. The same orthopedic surgeon examined and treated appellee from January to March, 1961, for an injury to his back. Appellee was hospitalized in April, 1961. He was again hospitalized for his back in November, 1962, and again treated for his back in February, 1963. The orthopedic surgeon stated that he had a voluminous file on appellee which showed that in December, 1962, he saw appellee, at which time he advised that an exploratory operation for a protruding intervertebral disc was necessary. This earlier diagnosis was identical to that given after the February 11, 1964, injury. Examination further revealed that appellee received a back injury in August, 1962, when a scaffold broke. A claim for workmen's compensation benefits was made by appellee after this incident.
In discussing whether or not appellant McLaurin's attorney was correctly permitted to cross-examine appellee Walters about all the foregoing condensed medical history, the Court specifically noted that appellee had admittedly sustained similar injuries prior to the February, 1964, accident and was still wearing a back brace for those prior injuries. It was obvious that all of his injuries from the several incidents were the same, and, accordingly, the attorney for the defendant had the right under the authorities to inquire into those injuries to ascertain what part, if any, the incident giving rise to the suit being discussed contributed to the overall back injury picture.
In Walters, supra, the appellant assigned as error the refusal of the trial court to admit in evidence records of amounts paid appellee in settlement of compensation claims against former employers in connection with injuries to the same area of the back, which appellee contended was injured in the February 11, 1964, fall. It was contended by appellant that he should have been permitted to introduce in evidence the workmen's compensation file for the prior back injuries. This Court held that the file should have been permitted to be introduced as all of the injuries admittedly were to the same area of the body, were relatively close together, and obviously there was a connection between them. However, this Court refused to approve the introduction of attempts to compromise the claims and indicated clearly that the amount of compensation paid in the earlier claims was admissible solely because it was paid for the identical type of injury for which appellee was again seeking recovery. [The opinion clearly indicates that this Court in the present case does not approve of a detailed examination as to amounts received in settlement of an injury sustained eighteen years ago, particularly when there was no evidence connecting the prior and present injuries.]
In order for testimony regarding specific amounts to be permissible, some clear and close connection between the prior and present claims must be shown. Coker v. Five-Two Taxi Service, 211 Miss. 820, 52 So.2d 356 (1951). In Walters, even though there was the extremely close connection in time and type of injury, the court handled the matter by ordering a remittitur or in the alternative a new trial on the issue of damages only.
We hold that it was permissible for appellee's attorney here to have interrogated appellant as to whether or not she had received and been treated for similar injuries in prior accidents or incidents. In the event similar injuries had been received, it would be proper to interrogate further as to whether or not they had any connection with the claim then being presented. It was improper and error to permit examination about settlement negotiations and the amount of settlement made.
*998 We find that all jurisdictions to which the question has been presented have made the same findings as set out above. The general rule for testimony relative to prior injuries or claims for money for prior unrelated injuries is set out in 25A C.J.S. Damages § 147 (1966), as follows:
Evidence showing the plaintiff had suffered an injury as the result of an occurrence which took place before the accident in question ordinarily is inadmissible unless a causal connection between such injury and the accident or injury in question is established.
... evidence showing that prior to the injury in question, plaintiff sued for personal injuries sustained by him in a previous accident is inadmissible where it serves no useful purpose, since it involves the danger of undue prejudice and a time-wasting confusion of issues ...
Evidence showing the plaintiff accepted a certain sum of money for personal injuries sustained by him prior to the injury in question is inadmissible where the circumstances are such that it is clearly irrelevant and immaterial and has no probative value in that it sheds no light on the nature, extent or cause of the injury in question.
This same question was developed in 69 A.L.R.2d 593 (1960), as follows:
Most of the cases in which the question has been raised have held or recognized that the plaintiff may properly be cross examined as to his previous injuries, physical condition, claims, or actions for injuries similar to that constituting the basis of the present action, for the purpose of showing that his present physical condition is not the result of the injury presently sued for, but was caused, wholly or partially, by an earlier injury or pre-existing condition ... This recognition of the propriety of such cross examination is based upon the reasoning that the matter so inquired about is pertinent to the issue of the plaintiff's present physical condition and the evidence thereby elicited is admissible in respect to the matter of damages, because the defendant is liable only for injuries resulting from his negligence and not for the residual effects of a prior injury or pre-existing condition. Such recognition is not, however, unlimited, it being implicit in most of the cases that such cross examination is to be restricted to the nature and extent of previous injuries and in some instances the courts have specifically characterized as improper, in connection with cross examination as to previous claims or actions, inquiry with respect to whether plaintiff had consulted a lawyer with reference thereto and the nature of the legal advice received, whether he had obtained a settlement or recovery for his previous injury, and the amount of such settlement or recovery, such matters being irrelevant to the issues being tried.
See also Ferriola v. Burdick, 146 Conn. 574, 153 A.2d 319 (1959); City of Wichita Falls v. Chandler, 348 S.W.2d 48 (Tex.Civ.App. 1961); Martinez v. Knowlton, 88 N.M. 42, 536 P.2d 1098 (App. 1975); Greim v. Sharp Motor Lines, 101 Ill. App.2d 142, 242 N.E.2d 282 (Ill., 3d Dist. 1968); Mitchell v. Colquette, 93 Ariz. 211, 379 P.2d 757 (1963); Henderson v. Morris, 476 S.W.2d 471 (Tex. Civ.App. 1971); Horton v. Brooks, 325 So.2d 912 (Miss. 1976).
Appellee requested and was granted his Instruction D-9, which reads as follows:
The court instructs you that if you believe from a preponderance of the credible evidence that the driver of the Coca-Cola truck motioned to Mr. Smith for him to go ahead and cross the two lanes of highway 80 West, and if you further believe from a preponderance of the credible evidence that in doing so the driver of the Coca-Cola truck did not act with reasonable care in failing to ascertain that it was safe for Mr. Smith to cross the two lanes of traffic, then the Court instructs you that the failure to use reasonable care on the part of the driver of the Coca-Cola truck was negligence, and, therefore, if you believe from a preponderance of the credible evidence that the negligence of the driver of the Coca-Cola truck, if any, was the sole proximate cause of the accident and the damages *999 claimed by Mrs. Harriet Boyd, then the court instructs you that you must return a verdict for the defendant... .
This instruction clearly stated to the jury that if the driver of the Coca-Cola truck waved appellee Smith through the cross-over and into the westbound lane of travel, then appellee was absolved from negligence. The fallacy of this argument is clear. It is contrary to all authorities, both statutory and case law, which prohibited appellee from making a left turn across the westbound lane of travel without first ascertaining that such could have been made with reasonable safety.
Mississippi Code Annotated section 63-3-707 (1972) states:
No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement or after giving an appropriate signal in the manner provided in this article in the event any other vehicle may be affected by such movement.
A signal of intention to turn right or left shall be given continuously for a reasonable distance before turning.
No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided in this article to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.
Code section 63-3-803 states:
The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard. However, said driver, having so yielded and having given a signal when and as required by Article 15, may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right-of-way to the vehicle making the left turn.
See Lynch v. Suthoff, 220 So.2d 593 (Miss. 1969); Sohio Petroleum Co. v. Fowler, 231 Miss. 72, 94 So.2d 350 (1957); American Creosote Works v. Rose Bros., 211 Miss. 173, 51 So.2d 220 (1951).
It is clear that in preparing to make his left turn, appellee did not have the legal right to rely on the truck driver before driving his vehicle out into the heavily traveled Highway 80 westbound lanes. He had a duty to ascertain whether he could do so with reasonable safety. Admittedly, he did not do so and appellant would have been entitled to a peremptory instruction on liability had one been requested.
Appellee advances the argument that if granting the discussed instruction was error, it is now moot as there was a verdict for the plaintiff. We cannot say that it is moot as the statement by the court regarding the disputed and contradicted actions of the Coca-Cola truck driver which might possibly absolve appellee of his legal duty would certainly tend to confuse the jury of average laymen. That confusion could and probably would enter into the question of damages to be assessed against appellee.
Appellant is a certified public accountant. She had worked for many years and at the time of the collision was earning a livelihood for herself and her husband who was disabled. She described in detail the loss of her ability to do full time work. At the time of the trial, some one year and ten months after the collision, she was not able to work but half her usual time. Her gross income in 1977 was around $20,000; in 1978, she grossed $9,000 and netted $4,600. She anticipated a loss of $11,000 for the year 1979. She testified that she could only work a couple of hours and then would have to lie down and rest, and this condition existed at the time of trial. As of the trial date, her medical, drug and physical therapy expenses as a result of the collision were itemized in the total sum of $4,548.52. She was permitted to give an estimate of lost past and future income if her condition *1000 persisted, and, as hereinafter will be shown, the reasonable probability was that it would continue.
A number of lay witnesses, including those who employed appellant's services, testified to the diminished amount of work appellant could do after the collision and the difficulty that they personally observed when appellant attempted to perform her work.
Extensive testimony was taken from Dr. T.W. Talkington, a prominent orthopedic surgeon. He had examined appellant as a result of the workmen's compensation injury in 1967, and testified positively that her complaint then was a low back strain that gave her very little trouble and from which she fully recovered. She had no cervical problem at that time and none from then until after the collision in question. He had seen her on occasions for other problems since 1967. Dr. Talkington confirmed appellant's inability to do full time work subsequent to the collision. He described in detail the injury to her cervical spine and the disability she had incurred and would continue to experience. He testified that his examination showed a pre-existing arthritic condition in appellant's cervical spine but that she had had no appreciable trouble with it prior to the collision. He testified positively that the collision with appellee's vehicle "precipitated the symptoms" which resulted in appellant's disability. He testified positively that appellant's injuries were permanent, and that her injury would greatly interfere with her work as a CPA, particularly sitting at a desk. In his opinion, she would need to continue medication and physical therapy for an indefinite period. She had been taking physical therapy treatments for a number of months. The physical therapist testified as to the many treatments that had been given appellant.
The verdict of the jury was barely more than actual medical and drug expenses incurred up to the time of trial. Nothing was allowed for the undisputed pain, suffering, mental anguish and loss of income. The medical proof as to appellant's permanent injuries resulting from the collision was undisputed except for the doubtful and nebulous cross-examination that her neck had been hurt eighteen years before. Undisputedly, appellant also suffered serious injuries to her arm and knee. We find clearly that the verdict of the jury was grossly inadequate and against the overwhelming weight of the evidence. The only question is whether or not to set an additur or in the alternative a new trial on the issue of damages only. The amount of damages is a question of fact. This Court does not hesitate to set additurs or remittiturs when we have a reasonably accurate basis on which to fix an amount. Due to the complexity of this case, and the voluminous medical evidence, it is our opinion that we should not order an alternative additur in this case but should reverse it for a new trial on the issue of damages only.

CROSS ASSIGNMENT OF ERROR
Appellant was permitted to introduce the testimony of Dr. Paul Oliver, a professor of Economics at the University of Mississippi School of Business. This witness clearly was an expert. His testimony assumed that appellant would lose the amount of $10,000 each year from her profession because of her permanent injuries. The expert was permitted to project this loss for the time that a person of Mrs. Boyd's age would be expected to work before retirement. Appellee objected to this testimony as being speculative and not within the realm of Dr. Oliver's expertise. We are constrained to say that any layman could have projected the same figures with the same number of years. The principal addition by Dr. Oliver was the statistics showing those years. Of course, had this been a death case his testimony would have been more appropriate. We do not think that we should hold on this cross-assignment of error that his testimony was erroneously received. It was admissible for what it may have been worth.
Cross-appellant alleges error in three instructions requested by plaintiff and approved by the court. We do not find error in any of these instructions when considered *1001 with all other instructions. Due to the disposition of the case, it is necessary to affirm as to the cross-assignment of error.
REVERSED ON DIRECT APPEAL AND REMANDED FOR A NEW TRIAL ON THE ISSUE OF DAMAGES ONLY; AFFIRMED ON CROSS-APPEAL.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and COFER, JJ., concur.