*235
ON WRIT OF CERTIORARI

DICKINSON, Presiding Justice,
for the Court.
¶ 1. In this negligence suit, the defendant admitted liability but contested her negligence was the proximate cause of all the damages claimed. The jury awarded the plaintiff less than the amount requested. Because causation is a question of fact for the jury, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
112. In March 2002, Dung Thi Hoang Nguyen — who had stopped behind Karen Thompson at a red light — reached for her purse, causing her foot to slip off the brake and her car to bump into Thompson’s. Neither car was damaged. Thompson— who did not, at the time of the accident, claim to be injured — testified that it felt as if her car had stalled. Nguyen and Thompson exchanged information and left the scene without calling the police. But after Thompson arrived at her parents’ home, her father told her to get a police report for her insurance provider, so Thompson called Nguyen, who agreed to meet her at the police station that night.
¶ 3. A few days later, Thompson visited her physician, Dr. James Martin, complaining of neck pain. Dr. Martin, who already was treating Thompson for migraine headaches, ordered an x-ray and ultrasound. He prescribed pain medication, and referred Thompson to a physical therapist.
¶ 4. An MRI of Thompson’s spine revealed a preexisting degenerative-disc disease associated with disc bulges. And despite ongoing therapy, Thompson continued to complain of headaches, insomnia, depression, and neck pain until, in 2004, physical therapist Ruth Bosarge referred Thompson to neurosurgeon Dr. Lee Kesterson. In 2005, Thompson underwent surgery to treat her abnormal discs. Thompson filed suit against Nguyen, seeking $234,316.49 in compensation. Nguyen admitted liability but contested that the accident had caused Thompson that much damage.
¶ 5. At trial, Thompson testified that her symptoms began after the accident and that she suffered from debilitating neck pain on a daily basis. She said her pain level — on a scale of one to ten — was between eight and nine, even after her surgery and physical therapy. She also testified that she wears heat wraps and applies topical pain medicine every day and, at night, she sleeps in a neck brace. Additionally, Thompson told the jury that she needs help with basic activities in the home — such as cooking and cleaning — and that her parents and grandparents take care of her daughter.
¶ 6. Dr. Martin confirmed that Thompson claimed her symptoms had begun after the accident. He also noted that Thompson was treated for abrasions typical of seat-belt trauma. Dr. Martin admitted that Thompson had preexisting disc disease, but testified that — to a reasonable degree of medical certainty — Thompson’s injuries were “caused or at least aggravated by [the] accident.” Dr. Kesterson testified that Thompson’s symptoms were related to the accident, but Ruth Bosarge refused to do so.
¶7. On cross examination, Thompson’s experts admitted that they knew nothing about the circumstances of the accident— such as speed, damage to the vehicles, or what type of vehicles were involved. Dr. Martin noted that both Thompson’s migraines and degenerative-disc disease predated the accident, and that her disease related to the same discs Thompson *236 claimed Nguyen injured. When asked whether Thompson’s symptoms “would probably at best be an aggravation” of her disease, Dr. Martin responded, “I think so.” Dr. Kesterson also stated that he “doubted the degeneration was caused by the accident” and that “the anatomy may or may not be related to that accident.”
¶ 8. Thompson admitted that the accident felt as if her car had stalled and that neither car had been damaged. She also admitted that, thirteen or fourteen years before her accident with Nguyen, she had been rear-ended in an accident that had caused damage.
¶ 9. Nguyen testified that neither car had been damaged, and that neither she nor Thompson had been injured immediately after the accident. When Nguyen rested, Thompson moved for a directed verdict as to causation. The circuit court denied Thompson’s motion and held that material facts were in dispute as to whether all or part of Thompson’s damages were causally related to the accident.
¶ 10. The next day, .the jury awarded Thompson $9,131-the exact amount of her physical-therapy bills. Thompson filed a motion for additur or a new trial on damages alone, which the circuit court denied. Thompson timely appealed, and the Court of Appeals reversed and remanded for a trial on damages, holding that the trial court erred by: (1) denying Thompson’s motion for a directed verdict; (2) denying Thompson’s motion for additur or new trial; and (3) refusing Thompson’s proposed peremptory jury instructions on causation, jury instructions on damages, and request for a special verdict.
ANALYSIS
1. The circuit court correctly denied Thompson’s motion for a directed verdict.
¶ 11. Thompson argues that she offered uncontradicted expert testimony that her neck-pain symptoms happened after the accident, and that three experts testified that — in terms of a reasonable medical probability — her symptoms were caused, or at least aggravated by, the accident. Thompson also notes that Nguyen offered no expert testimony. Therefore, according to Thompson, a directed verdict on causation was appropriate, and the jury should have.considered damages only.
¶ 12. We review the denial of a motion for a directed verdict de novo.[1] A directed verdict should be granted when the moving party — in this case, Thompson — is entitled to a judgment as a matter of law. To decide whether a directed verdict is appropriate, we consider as true the evidence that favors the nonmoving party,[2] and we view all reasonable inferences in that party’s favor.[3] And if a verdict for the nonmoving party can possibly be supported by the evidence — when viewed in the light most favorable to that party— then a directed verdict is not appropriate.[4]
¶ 13. Here, the burden was on Thompson to prove by a preponderance of the evidence that Nguyen’s negligence proximately caused her damages.[5] A plaintiff has the burden of proof, and must offer evidence that persuades the jury. The jury is not required to believe or trust the evidence submitted by the plaintiff, *237 and is free to accept all, part, or none of the plaintiffs evidence. A defendant is not required to prove or rebut anything.
¶ 14. And while it is true that three of Thompson’s experts testified that the accident caused or contributed to Thompson’s symptoms, these opinions:
[were] not obligatory or binding on triers of fact but [were] advisory in nature. The jury may credit them or not as they appear entitled, weighing and judging the expert’s opinion in the context of all of the evidence in the case and the jury’s own general knowledge of affairs.[6]
¶ 15. Also, cross examination of Thompson’s experts produced evidence in Nguyen’s favor. First, the accident itself was minor: neither vehicle was damaged, and Thompson testified that it had felt as if her car had stalled. Second, Thompson admitted to a previous, more serious, wreck with a drunken driver. Third, Thompson had preexisting degenerative-disc disease and, although her experts did testify that the accident caused her symptoms, they also admitted that the accident may have only aggravated her disease. And when asked if they had any knowledge of the accident’s circumstances—speed of the cars, damage, or type of vehicles involved—each expert responded “no.”
¶ 16. Viewing all reasonable inferences in Nguyen’s favor, we hold that the circuit judge correctly denied Thompson’s motion for a directed verdict.
2. The circuit judge did not abuse his discretion by dismissing Thompson’s motion for additur or a new trial on damages alone.
¶ 17. Thompson argues that the circuit judge abused his discretion by dismissing her motion for additur or a new trial on damages. She claims an additur was appropriate because the jury awarded only a portion of her reasonable and necessary medical bills, and the jury failed to render an award for pain and suffering. The Court of Appeals agreed and reversed and remanded the case for a trial on damages.
¶ 18. We review a trial court’s denial of additur under an abuse-of-discretion standard.[7] Under Mississippi Code Section 11—1—55, an additur may be granted when the court finds that the damages awarded were “excessive or inadequate” because the jury “was influenced by bias, prejudice, or passion,” or the award was contrary to the “overwhelming weight of credible evidence.”[8]
¶ 19. The Court of Appeals was of the opinion that the jury was confused, and that its confusion evidenced the bias, prejudice, or passion required to award an additur or a new trial on damages. According to the Court of Appeals, the length of deliberations and the jury’s questions to the judge demonstrated its confusion.
¶ 20. The jury deliberated for two and a half hours after closing arguments and one hour and fifteen minutes the following day. The jury asked the trial judge the following five questions:
1. Can we see the police report?
2. Were the transcripts of the videos entered into evidence? If yes, we do not have them.
3. Can we have a dictionary (preferably medical)?
*238 4. We feel we have too much information to fully and reasonably make a decision, is there any chance that we can return tomorrow?
5. Can we speak with you, the judge, in private? Do we need to write two statements?
¶ 21. We do not conclude that these questions demonstrate confusion. To the contrary, the questions suggest the jurors diligently and seriously pursued their duty. The first three questions related to evidence and testimony, and the fourth was asked at 7:25 p.m.-after the first two and a half hours of deliberation. We cannot know the reason the jury asked to speak with the judge, but the fact that they did does not show confusion. We do not find the trial court abused its discretion by denying Thompson’s motion for additur.
¶ 22. The Court of Appeals also held that, because the verdict was only four percent of Thompson’s requested damages — and the exact amount of her physical therapy bills, $ 9,131 — the resulting verdict must have been the product of bias, passion, or prejudice. But as this Court held in Dunn, the fact that “a jury’s verdict was far more modest than a plaintiffs immodest view of his damages hardly suggests that the jury was confused.”[9] And because the verdict was a general verdict, we cannot say for sure why $ 9,131 was the exact award. A trial judge is vested with broad discretion to grant or deny an additur,[10] and we cannot say here that the judge abused that discretion.
3. The grant and denial of jury instructions by the Court do not warrant reversal.
¶ 23. Thompson argued, and the Court of Appeals agreed, that the trial court erred by refusing Thompson’s proposed peremptory jury instructions on liability, jury instructions on damages, and request for a special verdict. We disagree.

Peremptory Jury Instructions on Liability

¶ 24. Because liability was not contested, Thompson proposed two peremptory jury instructions regarding liability:
PIA: The Court instructs you to find for the Plaintiff, Karen R. Thompson.
P7A: When you reach a verdict in this case, you should write it on a separate piece of paper. You need not sign it, and it may be in the following forms: “We, the jury, find for the plaintiff, Karen R. Thompson, and assess her damages at $_”
The trial court denied the above instructions, and granted Nguyen’s proposed instruction:
D8: 1. If your verdict is for the Plaintiff, then the form of your should be: “We, the jury, find for the Plaintiff Karen R. THOMPSON, and assess her damages $_
2. If your verdict is for the Defendant, then the form of your verdict should be: ‘We, the jury, find for the Defendant, DUNG THI HOANG NGUYEN.”
¶ 25. We review jury instructions as a whole, and so long as those instructions fairly present the applicable law, reversal is not warranted.[11] Here, the jury was instructed that Nguyen had admitted liability. Thompson submitted, and the jury was read, instruction P2A, stating *239 “Nguyen has admitted liability in this case. Accordingly, you are instructed to award Thompson any and all damages that you find were proximately caused ... by the accident....”
¶ 26. Thompson also argued that instruction D8 did not fairly present the applicable law because it gave the jury the option of finding for Nguyen. Because Nguyen had admitted liability, Thompson argues, the jury could not reach a verdict in Nguyen’s favor. But this is incorrect. Confessing liability is not synonymous with confessing a verdict. Although Nguyen admitted liability, she contested causation. The jury was free to find that the accident did not proximately cause any of Thompson’s injuries. The jury was instructed that liability was not at issue, but proximate cause was. Therefore, the circuit court did not err in refusing to give instructions PIA and P7A, and giving D8.

Jury Instructions on Damages

¶27. Thompson argues that the circuit judge erred by refusing to give instructions P9A and P10A, which stated:
P9A: You are instructed that if you find that any of Thompson’s injuries were proximately caused or exacerbated by the automobile accident that is the subject of this lawsuit, you must award Thompson all reasonable and necessary medical expenses incurred as a result of such injuries.
P10A: You are instructed that if you award Thompson’s medical expenses for injuries incurred or exacerbated as a result of the accident which is the subject of this lawsuit, you must award Thompson damages for all pain and suffering that you find she experienced as a result of such injuries. This includes past, present and future pain and suffering.
¶28. Thompson argues that these instructions should have been given because they “are entirely accurate statements] of the law, and Plaintiffs counsel provided the appropriate case cite to the Court.” The Court of Appeals agreed and further found that no other instruction given accurately instructed the jury on damages. But Thompson’s own instruction, P2A, was given, and that instruction properly states the law of damages:
P2A: Nguyen has admitted liability in this case. Accordingly, you are instructed to award Thompson any and all damages that you find were proximately caused or exacerbated by the accident that is the subject of this lawsuit.
Despite Thompson’s argument, the failure to give a legally correct jury instruction is not reversible error, so long as the jury has been properly instructed.
¶ 29. Thompson also argues that instruction P6A — an instruction she submitted — was erroneously granted and read to the jury. Thompson argues that P6A misstates the law because it instructed the jury only that they:
... may consider the following factors to determine the amount of damages to award as may be shown by a preponderance of the evidence:
1. The type of injuries to the plaintiff and their duration;
2. Past, present and future physical pain and suffering and result in loss of enjoyment of life, if any,
3. Reasonable and necessary medical expenses already incurred and those which are reasonably probable to be incurred in the future, if any.
According to Thompson, the jury must consider those factors. The Court of Appeals agreed and reversed.
¶ 30. Even if Thompson’s legal analysis were correct, she cannot now object — for *240 the first time on appeal — to her own instruction; and particularly to one that correctly states the law. The jury was instructed by P2A that they must award “any and all damages that ... were proximately caused or exacerbated by the accident,” and P6A states what may be considered to calculate the award. Therefore, we find no error with P6A.

Special-Verdict Form

¶ 31. Finally, Thompson argues that the circuit judge erred by refusing instruction P11A: a special-verdict form. The Court of Appeals agreed and reversed, reasoning that if the jury had been given a special-verdict form, “there would be no question as to the basis of the jury’s action.” But we disagree. Special-verdict forms are not required.[12] Indeed, Mississippi Rule of Civil Procedure 49(a) states that “jury determination^] shall be by general verdict.” Trial judges have broad discretion to use special verdicts, which “are appropriate in unusual or complicated cases, or in cases where there is a possibility of juror bias or prejudice.”[13] Thompson’s case involved a simple car accident in which liability was admitted. The jury’s task was to determine what amount of Thompson’s damages, if any, were caused by the accident. In this simple case, we cannot say the trial judge abused his discretion by refusing to give a special verdict.
CONCLUSION
¶ 32. Nguyen admitted liability, and the jury’s only task was to determine what, if any, damage was proximately caused by Nguyen’s negligence. This does not mean, as Thompson argues, that the jury was required to find for Thompson. It was Thompson’s burden to prove damages that were proximately caused by the negligence. The jury found for Thompson and, after weighing the evidence, awarded her $9,131. The circuit judge correctly denied Thompson’s motion for a directed verdict. He did not abuse his discretion by denying Thompson’s motion for additur or new trial on damages, nor did he abuse his discretion by denying Thompson’s jury instructions. We reverse the Court of Appeal’s judgment, and reinstate and affirm the judgment of the Circuit Court of Jackson County.
¶ 33. THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS REINSTATED AND AFFIRMED.
WALLER, C.J, CARLSON, P.J., RANDOLPH, LAMAR AND CHANDLER, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PIERCE, J. KING, J., NOT PARTICIPATING.

. Solanki v. Ervin, 21 So.3d 552, 556 (Miss.2009).

. Id. (quoting White v. Thomason, 310 So.2d 914, 916-17 (Miss.1975)).

.Id.

. Id.

. Delahoussaye v. Mary Mahoney's Inc., 783 So.2d 666, 671 (Miss.2001).

. Flight Line, Inc. v. Tanksley, 608 So.2d 1149, 1166 (Miss.1992) (internal quotations omitted).

. Maddox v. Muirhead, 738 So.2d 742, 743 (Miss.1999).

. Miss.Code Ann. § 11-1-55 (Rev.2002).

. Dunn v. Jack Walker’s Audio Visual Ctr., 544 So.2d 829, 831 (Miss.1989).

. Id. at 833.

. Dooley v. Byrd, 64 So.3d 951, 960 (Miss.2011).

. Poynter v. Trotter, 250 Miss. 812, 168 So.2d 635 (1964).

. Jeffrey Jackson, Mississippi Civil Procedure, § 14A:8 (2009).