ON WRIT OF CERTIORARI

DICKINSON, Presiding Justice,
for the Court:
¶ 1. In this personal-injury case, the parties stipulated to the defendant’s fault and proceeded to trial on injury and causation. The jury awarded the plaintiff zero dollars. The Mississippi Court of Appeals found that the jury’s determination of damages conflicted with the overwhelming weight of the evidence. We disagree, but we affirm the Court of Appeals’ decision to reverse and remand for a new trial on damages because the trial judge admitted irrelevant and highly prejudicial evidence of the plaintiffs husband’s income.
FACTS AND PROCEDURAL HISTORY
¶ 2. While driving on July 25, 2005, Kathryn Loyacono observed Watacha Shelby backing her car toward Loyacono on the same road. Loyacono brought her vehicle to a stop, but Shelby backed into the front of her vehicle. Following the accident, Loyacono proceeded by ambulance to the emergency room, complaining of neck and back pain. She was released the same day after being diagnosed with a muscle strain.
¶ 3. At the time of the accident, Shelby lacked liability insurance, but Loyacono possessed an uninsured-motorist policy through Travelers Insurance. Accordingly, Loyacono filed suit against Shelby and Travelers, seeking to recover the policy *934 limit of $2.5 million. Prior to- trial, the circuit judge entered an order acknowledging that the parties had agreed that Shelby had proximately caused the accident and that the Travelers policy covered any injuries Loyacono suffered. Thereafter, the parties proceeded to trial, submitting the issues of injury and the causation thereof to the jury.
¶ 4. Both sides presented expert testimony at trial. All three experts — one for the plaintiff and two for the defense— agreed that Loyacono had suffered a muscle strain as a result of the accident. The plaintiffs expert attributed years of back and neck pain, loss of earning capacity, and numerous medical treatments to the accident. The defense experts opined that the muscle strain would result only in minor pain for a short time following the accident and attributed the additional pain and medical treatment to a preexisting back condition.
¶ 5. After being instructed on the defendant’s fault in the accident and charged with determining whether Loyacono had suffered any injury as a result of the accident, the jury awarded zero dollars to the plaintiff. Loyacono appealed, arguing that the trial court had erred by denying her motions for a directed verdict on causation, judgment notwithstanding the verdict, or, in the alternative, a new trial on damages, because the jury’s verdict con.flicted with the overwhelming weight of the evidence. Loyacono also argued that she had suffered prejudice because of an agreement between Shelby and Travelers, that the trial court had erred by allowing references to her husband’s income, that defense counsel had committed discovery violations, that defense counsel had committed misconduct, that the trial court had erred by failing to inquire into potential juror misconduct, that the trial court had erred by refusing certain jury instructions, and that the trial court had erred by granting certain jury instructions.
¶ 6. We assigned the case to the Mississippi Court of Appeals. After reviewing the evidence presented at trial, the Court of Appeals concluded that “the evidence of Shelby’s fault for the accident and Loyaco-no’s injury as a result of the accident was uncontradicted. However, the evidence conflicted regarding the extent of Loyaco-no’s injury as a result of this accident.”[1] The court then noted that all experts agreed that Loyacono had suffered a muscle strain as a result of the accident and reversed and remanded for a new trial on damages.[2] We granted certiorari.
ANALYSIS
I. Whether the jury returned a verdict against the overwhelming weight of the evidence.
¶ 7. On certiorari, Travelers argues that the Court of Appeals erred by finding that the jury had returned a verdict against the overwhelming weight of the evidence. Travelers primarily relies on this Court’s opinion in Herring v. Poirrier, which held that a jury may conclude, based on competent evidence, that a plaintiff suffered no injury as a result of an automobile accident, despite the fact that the trial judge directed a verdict on the defendant’s fault in causing the accident.[3] While we find that this case presents a different evidentiary issue than that addressed in Herring, we agree that the Court of Appeals erred by finding that the jury had *935 returned a verdict against the overwhelming weight of the evidence.
¶ 8. On appeal, Loyacono argued that she had presented uncontradicted evidence at trial showing that she had suffered some injury as a result of the accident. Accordingly, she argued that the trial judge should have granted a directed verdict on causation of her injury, a judgment not withstanding the verdict, or a new trial on damages. The Court of Appeals determined that experts for both sides agreed that Loyacono had suffered a muscle strain as a result of the accident and found that the trial court had erred by failing to grant a new trial on damages.
¶ 9. “Motions for directed verdict and judgment notwithstanding the verdict (JNOV) ‘challenge the legal sufficiency of the evidence.’ ”[4] We review such motions de novo, and “if a verdict for the nonmoving party can possibly be supported by the evidence — when viewed in the light most favorable to that party— then” neither a directed verdict nor a JNOV is appropriate.[5] A motion for a new trial, on the other hand, may be granted when the jury returns a verdict against the overwhelming weight of the evidence.[6] A jury award in particular “will not be ‘set aside unless so unreasonable as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.’ ”[7]
¶ 10. In Herring v. Poirrier, this Court affirmed a jury’s decision to award zero dollars in damages when the trial judge granted a directed verdict on fault in the automobile accident.[8] In that opinion, we stated that “the jury’s refusal to award damages to Herring could be based either on the jury’s finding that Herring was not injured or that the damages that Herring alleged were not caused by the accident.”[9] We noted that the defendant produced expert testimony opining that the accident was not the proximate cause of any injury and that the plaintiff’s expert had acknowledged that his initial evaluation of the plaintiff showed no injury.[10] But here, we are faced with the jury’s decision to reject uncontradicted testimony.
¶ 11. The Court of Appeals’ judgment— and the plaintiffs claims in support of the motions for directed verdict, JNOV, and new trial — center on the fact that the plaintiffs expert testified that she had suffered a muscle strain as a result of the accident and that the two defense experts agreed. While the defense experts testified that Loyacono’s preexisting back condition caused the extensive medical care and loss of earning capacity for which she sought damages, the Court of Appeals concluded that the ■ jury must award some damages due to the agreed testimony on Loyacono’s muscle strain.
¶ 12. In the context of automobile collision cases, we have stated repeatedly that:
*936 A plaintiff has the burden of proof, and must offer evidence that persuades the jury. The jury is not required to believe or trust the evidence submitted by the plaintiff, and is free to accept all, part, or none of the plaintiffs evidence. A defendant is not required to prove or rebut anything.
[[Image here]]
[Expert opinions are] not obligatory or binding on triers of fact but. [are] advisory in nature. The jury may credit them or not as they appear entitled, weighing and judging the expert’s opinion in the context of all of the evidence in the case and the jury’s own general knowledge of affairs.[11]
Further, we have stated that uncontradict-ed evidence ordinarily should be taken as true by the trier of fact, unless that evidence is contradicted by the circumstances of the case or inherently improbable, incredible, or unreasonable.[12]
¶ 13. While the jury heard testimony that the plaintiff had suffered a muscle strain as a result of the accident, the jury also heard the plaintiffs expert concede on cross-examination that he lacked any knowledge about the accident itself. The jury also had before it photographic evidence that the accident had produced such a minimal impact that it had resulted in no more property damage ■ than scratched paint. The circumstances of the accident, coupled with the jury’s discretion to accept or reject expert testimony, provided sufficient grounds for the jury to conclude that Loyacono had suffered no injury as a result of the accident.
¶ 14. Accordingly, the Court of Appeals erred by finding that the jury rendered a verdict against the overwhelming weight of the evidence. That said, we find that the Court of Appeals correctly reversed and remanded for a new trial on damages.
II. Whether the trial court erred by allowing references to the plaintiffs husband’s income.
¶ 15. Loyacono contends that the trial court erred by permitting defense counsel to inquire into her husband’s income during cross-examination over her written pretrial motion and contemporaneous objection. She suggests that this evidence lacked any relevance to the case at hand and served only to prejudice the jury against a wealthy plaintiff. Travelers argues that Loyacono opened the door for this evidence on direct examination and that the evidence is relevant to her claim for loss of earning capacity.
¶ 16. We review a trial judge’s decision to admit or exclude evidence for an abuse of discretion, and we will not reverse unless the erroneous admission or exclusion affects a substantial right of the party.[13] Relevant evidence is that which has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” [14] Mississippi Rule of Evidence 402 precludes the admission of irrelevant evidence.[15]
*937 ¶ 17. Loyacono worked as a law-office manager for her husband. Although Travelers’ relevance argument is inarticulately presented and difficult to follow, Travelers appears to contend that evidence of her husband’s substantial income and capacity to pay more than Loyacono earned served to show that she received a salary beyond her actual contributions to the firm. In turn, Travelers suggests that the jury could conclude that Loyacono did not lose earning capacity because her pre-injury earnings did not derive from her ability to work.
¶ 18. But the mere fact that an employer possessed a financial capacity to pay an employee large sums fails to lend probative value to the question of whether that employee received a reasonable salary for services rendered.[16] For example, a large company — such as the Home Depot — recoups millions of dollars in revenue each year. But a sales associate, who is paid twenty dollars per hour and is injured in a car accident, is not necessarily overpaid simply because Home Depot could pay that employee large sums of money if it so chose.
¶ 19. Further, even if a jury could draw some probative value from the husband’s ability to pay, the trial judge should have excluded that evidence under the balancing test of Mississippi Rule of Evidence 403. This Court repeatedly has held that the collateral-source rule precludes the presentation of evidence that a plaintiff has been compensated for her injury from some other source, such as payment from án insurance policy.[17] Our evidentiary holdings in collateral-source cases serve to ensure that the jury will not impermissibly deduct from the amount of damages caused by the defendant simply because the plaintiff has been otherwise compensated for those injuries.[18]
¶ 20. In the present case, the trial judge permitted the jury to consider the fact that the plaintiffs husband had earned millions of dollars as a personal-injury attorney. This evidence, of little to no probative value, presents the same concern as evidence of compensation through a collateral source. The evidence serves to show that the plaintiff need not be compensated by the defendant because that plaintiff has the financial means to cover her own injuries. Accordingly, this evidence is substantially more prejudicial than probative, and the trial judge abused his discretion by overruling the plaintiffs objections to its admission.
¶ 21. Further, we also are unpersuaded that the plaintiff opened the door for evidence of her husband’s income. During direct examination, Loyacono’s husband simply testified that he and another attorney had recovered $200 million for diet-drug lawsuit clients while discussing Loyacono’s contributions to the law firm. He in no way discussed his income. Therefore, the evidence was substantially more prejudicial than probative and should have been excluded. And we must reverse because the erroneous admission affected a substantial right of Loyacono.[19]
*938 ¶ 22. Not only did the income testimony replicate the prejudice found in our collateral-source-rule cases, it also contributed to a common defense theme throughout trial to prejudice the jury against Loyaco-no’s attorney husband. During his opening statement, defense counsel made repeated references to Loyacono’s husband’s profession; Defense counsel stated:
Here’s a lady who works in a law office' for a personal injury attorney. She knows that the more medical bills 'you run up and the more doctors you see, the more likely that you’re — if you only had $50 in medical bills and you go to a jury, they’re going to' say, That’s not much. But if you’ve got 70,000, you’ve got a lot more chance to get it. And that’s what she does for a living for— what she is paid by her husband $200,000 a year without a day of legal experience or secretarial skills. He’ll pay her whatever she wants to.'
[[Image here]]
The first thing she did when she called — after the accident when she called and said — she called her husband, who’s a lawyer who filed — who initially filed this lawsuit. Then he got Mr. Wilkins. Good move.
[[Image here]]
You’re going to hear the testimony that she made all these telephone calls and while she was making these telephone calls she was thinking, What would my husband, the personal injury lawyer— she admitted this. What would my husband tell his client to do under these circumstances? Sit in the ear and say you’ve got pain and call the ambulance. That’s going to run up some medical bills.
Defense counsel continued his theme of a personal-injury attorney seeking to rack up unnecessary medical bills during his cross-examination of Loyacono’s husband. He asked:
And in the 40 years that you practiced law, mostly what you did was personal injury work.
[[Image here]]
And in the personal injury department, in doing cases for personal injury, the more — generally, the more special damages, like medical bills, a person has, the more that you would expect to get from a jury?
[[Image here]]
You’re going to tell me, as a personal injury lawyer, that you would not — if you were going to go .to1 a jury trial, would you rather have $50 in medical bills or 100,000 in medical bills?
[[Image here]]
I’m talking about in — in general, don’t you expect to get more money in settlement or at a jury trial the higher the medical bills are?
¶ 23. Defense counsel’s attacks on Kelly Loyacono’s profession as a personal-injury attorney contributed to prejudice created by the income testimony. Coupled with evidence of Loyacono’s substantial income, defense counsel sought to col- or Kelly Loyacono in an unfavorable light. The trial judge should have excluded the income testimony and, as in our collateral-source-rule cases, that testimony requires reversal. Were there any question as to whether reversal is required, the derogatory references to Loyacono’s husband’s profession compounded the prejudice to such a degree that the need for reversal is clear.
CONCLUSION
¶24. The Court of Appeals erred by finding that the jury’s decision to award no damages conflicted with the overwhelming •weight of the evidence, but it reached the *939 correct result in reversing and remanding because we find that the trial judge committed reversible error by admitting evidence of the plaintiffs husband’s income. Because the parties proceeded to trial on damages alone, the trial judge’s errors affected only the jury’s decision on damages. Therefore, we affirm the Court of Appeals judgment, albeit for different reasons, and affirm the judgment of the circuit court in part, reverse it in part, and remand' the case to the Warren County Circuit Court for a new trial on damages.
¶ 25. THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT IS AFFIRMED IN PART, REVERSED IN PART AND THE CASE IS REMANDED.
WALLER, C.J., LAMAR, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR. KING, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. RANDOLPH, P.J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.

. Loyacono v. Travelers Ins. Co., No.2011-CA-00271-COA, — So.3d -, --, 2013 WL 811975, *2 (Miss.Ct.App. Mar.5, 2013).

. Id.

. Hetring v. Poirrier, 797 So.2d 797, 808-09 (Miss.2000).

. Patton v. State, 109 So.3d 66, 81 (Miss.2012) (quoting McClain v. State, 625 So.2d 774, 778 (Miss.1993)).

. Thompson v. Dung Thi Hoang Nguyen, 86 So.3d 232, 236 (Miss.2012) (citing Solanki v. Ervin, 21 So.3d 552, 556 (Miss.2009)).

. Bobby Kitchens, Inc. v. Mississippi Ins. Guar. Ass’n, 560 So.2d 129, 132 (Miss.1989) (citing Griffin v. Fletcher, 362 So.2d 594, 596 (Miss.1978); Clayton v. Thompson, 475 So.2d 439, 443 (Miss.1985)).

. Downs v. Ackerman, 115 So.3d 785, 790 (Miss.2013) (quoting Maddox v. Muirhead, 738 So.2d 742, 743 (Miss.1999) (quoting Rodgers v. Pascagoula Pub. Sch. Dist., 611 So.2d 942, 945 (Miss.1992))).

. Herring, 797 So.2d at 809.

. Id. at 808.

. Id.

. Downs, 115 So.3d at 791 (quoting Thompson, 86 So.3d at 236-37 (quoting Flight Line, Inc. v. Tanksley, 608 So.2d 1149, 1166 (Miss.1992))).

. Lucedale Veneer Co. v. Rogers, 211 Miss. 613, 635, 53 So.2d 69, 75 (1951).

. Robinson Prop. Group, L.P. v. Mitchell, 1 So.3d 240, 243 (Miss.2009) (quoting Whitten v. Cox, 799 So.2d 1, 13 (Miss.2000) (quoting Floyd v. City of Crystal Springs, 749 So.2d 110, 113 (Miss.1999))).

. Miss. R. Evid. 401.

. Miss. R. Evid. 402.

. The plaintiff has not argued, and we do not address, whether the reasonableness of a plaintiff’s salary prior to an injury is a permissible consideration when determining claims for loss of earning capacity.

. Eaton v. Gilliland, 537 So.2d 405, 407 (Miss.1989) (citing Coker v. Five-Two Taxi Service, 211 Miss. 820, 52 So.2d 356, 356-57 (1951)).

. Eaton, 537 So.2d at 407.

. Robinson Prop. Group, L.P., 7 So.3d at 243 (quoting Whitten, 799 So.2d at 13 (quoting Floyd, 749 So.2d at 113)).